# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

ELIZABETH GARCIA o/b/o
S.G.,

        Plaintiff,

v.                                  Case No. 5:20-cv-473-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I.   Status

Elizabeth Garcia, on behalf of her minor daughter, S.G., is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision finding that the minor is not disabled and therefore ineligible for child's supplemental security income ("SSI"). For purposes of this Opinion and Order, the designation "Claimant" refers to the minor child, S.G., and the designation

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed April 27, 2021; Reference Order (Doc. No. 18), entered May 10, 2021.

"Plaintiff" refers to her mother, Ms. Garcia. Claimant's alleged disability is the result of attention deficit hyperactivity disorder (ADHD). Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed April 27, 2021, at 90; see Tr. at 57-58.

Plaintiff filed an application for SSI on behalf of Claimant April 20, 2018, alleging an onset disability date of August 30, 2017. Tr. at 211-16; see also Tr. at 90. The application was denied initially, Tr. at 89, 90-102, 119-21, 124, and upon reconsideration, Tr. at 103, 104-18, 126-32, 135. On July 22, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Claimant and Plaintiff, who were represented by counsel. See Tr. at 52-68. At the time of the hearing, Claimant was ten years old and about to move into the fifth grade. Tr. at 56, 57. The ALJ issued a Decision on August 28, 2019, finding Claimant "has not been disabled . . . since April 20, 2018, the date the application was filed." Tr. at 45, 33-45.

Plaintiff, on behalf of Claimant, requested review of the Decision by the Appeals Council. Tr. at 5-6. In support of the request, Plaintiff submitted a Questionnaire filled out by Claimant's teacher, Tr. at 10-18, a medical record dated December 9, 2019, Tr. at 19-20, an Individual Educational Plan ("IEP") from Claimant's school dated October 23, 2019, Tr. at 69, 70-81, and an undated School Social Work Report reflecting results of social and behavioral testing that occurred on March 20, 2017, Tr. at 69, 82-88. On July 28, 2020, the Appeals

Council denied the request for review, Tr. at 1-4, making the ALJ's Decision the final decision of the Commissioner. On September 28, 2020, Plaintiff commenced this action on behalf of Claimant under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff makes one argument on appeal: that the Appeals Council erred in denying review in spite of the new evidence submitted to it. Memorandum in Opposition to the Commissioner's Decision (Doc. No. 20; "Pl.'s Mem."), filed June 28, 2021, at 2, 8-9. On August 25, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II.   The Disability Evaluation Process for Children

An individual "under the age of 18 [is] consider[ed] . . . disabled if [the individual] ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see 42 U.S.C. § 1382c(a)(3)(C)(i). When determining whether an

individual under the age of eighteen is disabled, an ALJ must follow the three-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; and (3) the impairment(s) meet, medically equal, or functionally equal any of the impairments set forth in the Listings. 20 C.F.R. § 416.924; see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the three-step sequential evaluation process for children); Banks ex rel. Hunter v. Comm'r of Soc. Sec. Admin., 686 F. App'x 706, 712 (11th Cir. 2017) (unpublished); T.R.C. v. Comm'r, Soc. Sec. Admin., 553 F. App'x 914, 918 (11th Cir. 2014) (unpublished); Turberville v. Astrue, 316 F. App'x 891, 892 (11th Cir. 2009) (unpublished).

With respect to the analysis conducted at step three, an ALJ considers the combined effect of all medically determined impairments, even those that are not severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c). The ALJ then looks to "objective criteria set forth in [the Regulations]" to determine whether the impairment(s) cause severe and marked limitations. Shinn, 391 F.3d at 1278. The Regulations contain the Listings "specifying almost every sort of [impairment] from which a person can suffer, sorted into general categories." Id. (citing 20 C.F.R. § 416.925(a)). Each listed impairment contains a discussion

of the different limitations on the child's abilities that the impairment may impose. Id. (citing 20 C.F.R. § 416.925(a)).

Limitations appearing in the Listings "are considered 'marked and severe.'" Id. (citing 20 C.F.R. § 416.925(a)). Limitations resulting from a child's impairment(s) meet "the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." Id. Limitations resulting from a child's impairments medically equal "the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" Id. (quoting 20 C.F.R. § 416.926(a)(2)).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." Id. To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" Id. Those domains are:

> (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and, (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1); see also T.R.C., 553 F. App'x at 918 (citation omitted). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or

an extreme limitation in one domain.'" Shinn, 391 F.3d at 1279 (alteration in original) (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

### III. The ALJ's Decision

The ALJ followed the required three-step sequential evaluation process for children. Tr. at 36-45. At step one, after recognizing Claimant "was a school-age child on April 20, 2018, the date the application was filed, and is currently a school-age child," the ALJ determined that Claimant had "not engaged in substantial gainful activity since . . . the application date." Tr. at 36 (emphasis and citation omitted). Next, at step two, the ALJ found Claimant suffers from "the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD); Personality and Impulse-Control Disorder; and Conduct Disorder." Tr. at 36 (emphasis and citation omitted).

At step three, the ALJ found that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 36 (emphasis and citation omitted). The ALJ then determined that "[C]laimant does not have an impairment or combination of impairments that functionally equals the severity of the listings." Tr. at 37 (emphasis and citation omitted). In terms of the six major domains of life, the ALJ ascertained the following: "[C]laimant has less than marked limitation in acquiring and using information," Tr. at 38 (emphasis omitted); "[C]laimant has

- 6 -

marked limitation in attending and completing tasks," Tr. at 40 (emphasis omitted); "[C]laimant has less than marked limitation in interacting and relating with others," Tr. at 41 (emphasis omitted); "[C]laimant has no limitation in moving about and manipulating objects," Tr. at 42 (emphasis omitted); "[C]laimant has less than marked limitation in the ability to care for herself," Tr. at 42 (emphasis omitted); and "[C]laimant has less than marked limitation in health and physical wellbeing," Tr. at 43 (emphasis omitted). Accordingly, the ALJ found that "[C]laimant does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." Tr. at 44.

The ALJ concluded that "[C]laimant has not been disabled . . . since April 20, 2018, the date the application was filed." Tr. at 45 (emphasis and citation omitted).

## IV.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less

than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1280 (11th Cir. 2020). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam); see also Noble v. Comm'r of Soc. Sec., 963 F.3d 1317, 1323 (11th Cir. 2020).

## V.   Discussion

As noted, Plaintiff challenges the Appeals Council's decision to deny review in light of the new evidence presented to it. Pl.'s Mem. at 2, 8-9.

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. See 20 C.F.R.

§§ 404.900(b), 416.1400(b). When the Appeals Council is presented with evidence that was not before the ALJ, the Appeals Council must consider the evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). In addition, a claimant must show good cause for submitting new evidence to the Appeals Council. See 20 C.F.R. §§ 404.970(b), 416.1470(b).

Evidence may be chronologically relevant even if it post-dates the ALJ's decision. See Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1322 (11th Cir. 2015). In Washington, for instance, the United States Court of Appeals for the Eleventh Circuit held that an examining psychologist's opinions were chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." Id. This was because the psychologist reviewed the claimant's treatment records from the period before the ALJ's decision; because the claimant told the psychologist he had suffered from the conditions at issue "throughout his life" (which obviously would include the relevant time period); and because there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." Id.

In Stone v. Soc. Sec. Admin., 658 F. App'x 551, 553 (11th Cir. 2016), on the other hand, the Court found that newly submitted medical records were not

chronologically relevant. In doing so, the Court observed that the circumstances were "significantly different" from those in Washington because the new records in Stone "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. Id. at 554.

Similarly, in Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Court found that progress notes post-dating the ALJ's decision did "not relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from Washington." Hargress, 883 F.3d at 1309-10. Further, the Court found that a treating physician's opinion post-dating the ALJ's decision was not chronologically relevant because, even though the physician opined that the limitations dated back to 2013 (prior to the ALJ's decision), "nothing in the form [completed by the physician] or any other documents indicated that [the physician] evaluated [the claimant's] past medical records when forming that opinion," and the physician "did not treat [the claimant] in 2013." Id. at 1310.

At the end of the day, although the Appeals Council is "not required to give a . . . detailed explanation or to address each piece of new evidence individually," id. at 1309 (citing Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014)), if the Appeals Council "erroneously refuses to

consider evidence, it commits legal error and remand is appropriate," Washington, 806 F.3d at 1320. "When a claimant properly submits new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Banks, 686 F. App'x at 709 (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007)).

Here, the challenged evidence is an IEP issued by Claimant's school on October 23, 2019, about two months after the ALJ's August 28, 2019 Decision. See Tr. at 69-81. The Appeals Council recognized Plaintiff's submission of the IEP and other evidence, but found there was no "reasonable probability that it would change the outcome of the decision" so the Council "did not exhibit this evidence." Tr. at 2.

Plaintiff argues the IEP indeed carries a reasonable possibility of changing the administrative result because it shows greater limitations than the ALJ found in the life domain of acquiring and using information. Pl.'s Mem. at 9. The ALJ found "less than marked limitation" in this domain. Tr. at 38. Any finding of marked limitations in this domain, combined with the ALJ's actual finding of marked limitations in the domain of attending to and completing tasks, see Tr. at 40, would have resulted in a disability determination because there would have been two marked limitations in the six domains of life, see Shinn, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.926a(d)

and citing 20 C.F.R. § 416.925(a)). Responding, Defendant argues the Appeals Council did not err because the IEP does not show marked limitations in the domain of acquiring and using information. Def.'s Mem. at 7-10. Defendant further contends the IEP is not chronologically relevant. Id. at 7-8.

The domain of acquiring and using information is used to consider how well a child acquires and learns information, and how well the child uses that information. 20 C.F.R. § 416.926a(g). School-aged should be able to: "learn to read, write, and do math"; "discuss history and science"; and "use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a(g)(2)(iv).

As relevant here, the ALJ, in supporting her finding of "less than marked limitation" in the domain of using and acquiring information, remarked:

> Reports from the record and testimony from the hearing demonstrate that [C]laimant has had issues with understanding and applying information. There are records from prior to the relevant period that indicate that [C]laimant was retained in the second grade and received Tier 2 interventions in reading. <u>Nevertheless, [C]laimant earned grades in the 90s in both language and reading, along with an 88 in math</u>. Since that time, [C]laimant was noted with normal comprehension and speech although she made temporal grammatical errors, her speech and language were clear and fluent. Neurological examinations were relatively normal, and an MRI of [C]laimant's brain

> from December 2015 was normal. [C]laimant has a 504 plan at school that provides her with more time for tasks, and Ms. Garcia testified they are in the process of establishing an [IEP] for [C]laimant. There is evidence that [C]laimant receives more time to complete her tasks, but the evidence does not suggest she is currently enrolled in special education classes. She has participated in occupational therapy as well as speech and language therapy and was noted with improvements in both areas. <u>Her grades from the 2018-2019 school year demonstrate satisfactory and excellent remarks in almost all areas</u>. Based on this information, the undersigned finds that [C]laimant has less than marked limitations in this domain of functioning.

Tr. at 38-39 (citations omitted, emphasis added).

The IEP submitted to the Appeals Council, specifically in the subject of math, documented more heightened academic issues than the ALJ found. Claimant's "IReady" math diagnostic scores demonstrated she was performing below her actual fifth grade level overall and in the specific areas of number and operations, and algebra and algebraic thinking. Tr. at 72. Claimant's "BIRGANCE . . . Mathematics Grade Placement Tests" put her two grades below her actual grade level (at a third grade level). Tr. at 72. The IEP also documented a "Content grade[] as of 10/14/19" for math of "64," Tr. at 72, which equates to a "D."

Upon review, the undersigned finds the Appeals Council erred in refusing to substantively consider the IEP. First, as to Defendant's contention that the IEP is not chronologically relevant, the Appeals Council did not rely on the

alleged lack of relation to the time period in question. See Tr. at 2. Defendant cannot now justify the Appeals Council's actions with reasons that it did not rely upon. But even if the Court considers Defendant's argument in this regard, it is due to be rejected. The IEP was authored just two months after the ALJ's Decision and is based upon testing and Claimant's performance even closer to or during the relevant time period. See Tr. at 72 ("Based on 2019 Fall IReady Diagnostic scores . . . ," "BIRGANCE September 2019"). In addition, there is no contention that Claimant's condition significantly worsened after the ALJ's Decision, and the evidence submitted to the Appeals Council does not demonstrate such a worsening. Cf. Stone, 658 F. App'x at 554; Banks, 686 F. App'x at 709 (citations omitted) (emphasis added) (finding in a child's SSI denial case that "the Appeals Council properly determined that the new evidence did not relate to the period on or before the ALJ's decision" when "[t]he new evidence post-dated the decision, was not based on experiences from the relevant time period, and described the onset of a new condition"). Accordingly, the IEP is chronologically relevant.

As to Defendant's contention that there is no reasonable possibility the IEP would change the ALJ's Decision, the undersigned disagrees. The IEP, specifically in the area of math, contradicts the ALJ's educational findings in the domain of using and acquiring information. Compare Tr. at 38-39, with Tr. at 72. There is a reasonable possibility that, upon consideration of the IEP, the

ALJ would find greater limitations in this domain. And, if so, Claimant could be found to be disabled (meeting the requirement of two marked limitations in the major domains of life). It is for the SSA, not the undersigned, to determine whether to accept the limitations in the first instance.

In light of the above, the IEP is new, material, chronologically relevant, and carries a reasonable probability of changing the administrative result. The Appeals Council thus erred in refusing to substantively consider it, and remand is required. See Washington, 806 F.3d at 1320; 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

## VI. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Consider the additional evidence submitted to the Appeals Council; and

(B) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC (Doc. No. 43, ¶¶ 6, 8).

**DONE AND ORDERED** in Jacksonville, Florida on February 17, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record